UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EBW Laser, Inc., | ) | Case No. 05-10220C-7G |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| EBW, Inc., | ) | Case No. 05-10221C-7G |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| Charles M. Ivey, III, | ) | |
| Trustee for EBW Laser, | ) | |
| Inc., and EBW, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-2004 |
| | ) | |
| James Mark McDaniel, Jr.; | ) | |
| C. Richard Epes; Nsite | ) | |
| Management, LLC; Nsite | ) | |
| Laser, LLC; Dianne M. Atta; | ) | |
| Bridget Gislimberti; and | ) | |
| Central Carolina Surgical | ) | |
| Eye Associates, P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This adversary proceeding came before the court on October 21, 2008, for hearing on the Defendants' motion for summary judgment. Charles M. Ivey, III and Edwin R. Gatton appeared on behalf of the plaintiff and Bradley E. Pearce appeared on behalf of the defendants.

## MATTER BEFORE THE COURT

Defendants' motion seeks summary judgment as to all ten

remaining causes of action alleged by the plaintiff. For the reasons that follow, the court has concluded that the defendants' motion should be granted in part and denied in part.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2546, 2548 (1986). In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." Seabulk Offshore, Ltd. v. American Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004) (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001). The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. Celotex, 477 U.S. at 323. Once the moving party has met its initial burden of proof, the non-moving party must then set forth specific facts sufficient to raise a genuine issue for trial. Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment." Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986) (emphasis in original). The nonmoving party may not rest on its pleadings or mere assertions of disputed facts to defeat the motion; if the nonmoving party fails to do so, summary judgment may be entered against him. Matsushita, 475 U.S. at 586.

In determining whether to grant summary judgment, the court's role does not include weighing the evidence or making findings of fact. Anderson v. Liberty Lobby, Inc., 447 U.S. at 249-50. The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

                                DISCUSSION

The first matter that will be addressed is an argument by the defendants that they should not be held liable because they have caused substantial debt of the Debtor, EBW Laser, Inc. ("EBWL"), to be eliminated and removed from its balance sheet. According to the evidence relied upon by the defendants, through a series of refinancing transactions involving the defendants, EBWL has been relieved of indebtedness of some $4,519,712[1] which defendants argue

---

[1] Defendants' brief in support of their motion for summary judgment claims that the amount of debt removed is in excess of $11,000,000. However, an analysis of the record now before the court indicates that the actual amount is $4,519,712.

                                - 3 -

should preclude any recovery by the plaintiff in this proceeding. Although defendants did not refer to a specific legal theory to support such a defense, it appears that they are relying upon the doctrine of setoff as the basis for this defense.

    1.   Setoff Defense

This court recently stated the requirements for a setoff in <u>In re Carolina Acoustical and Flooring, Inc.</u>, No. 07-2032, 2008 WL 2369599 (Bankr. M.D.N.C. 2008):

> If a right of setoff exists under applicable state law, then section 553 preserves the "right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...." 11 U.S.C. § 553.  Thus, in order to exercise a right of setoff under section 553, there are four conditions that must exist: (1) the creditor must hold a "claim" against the debtor that arose before the commencement of the case; (2) the creditor must owe a "debt" to the debtor that also arose before the commencement of the case; (3) the claim and debt must be "mutual"; and (4) the claim and debt each must be valid and enforceable.  5 <u>Collier on Bankruptcy</u> ¶ 553.01[1] (15th ed. rev .2008).  These are the section 553 requirements that must be satisfied in order for the defendant to prevail on its motion for summary judgment and, as the party asserting setoff, the defendant has the burden of proving each of the requirements by a preponderance of the evidence.  <u>In re Krause</u>, 261 B.R. 218, 222 (B.A.P. 8th Cir. 2001); <u>In re Camellia Food Stores, Inc.</u>, 287 B.R. 52, 59 (Bankr. E.D. Va. 2002) (citing numerous cases).

2008 WL 2369599, at *2.

Thus, in order for the defendants to have a right of setoff, the record must show:  (1) that there is a right to setoff under nonbankrupcy law, and (2) that the four conditions required under

section 553 exist.  As discussed below, the record now before the court is insufficient to show that the defendants have a right to setoff under North Carolina law[2] and they, therefore, are not entitled to summary judgment based upon setoff.

North Carolina recognizes the right to setoff when mutual debts exist between parties.  Durham, 882 F.2d at 833; see also, Old Southern Life Ins. Co. v. Bank of North Carolina, N.A., 244 S.E.2d 264, 271 (N.C. App. 1978) ("The right of set-off arises and can be enforced only where there are mutual debts between the parties.").  "In order to invoke the right of setoff, a debtor creditor relationship must exist between the parties." Old Southern Life, 244 S.E.2d at 271.  "The party invoking the right [to setoff] cannot maintain it, unless he could also maintain an action against the other party to recover the amount which he seeks to have allowed as a set-off or counterclaim." Id. (quoting Coburn v. Carstarphen, 139 S.E. 596, 597 (N.C. 1927)).  This means that where the right to recover is based upon a party having paid the obligation of another, such payment must not have been voluntary. Macon County Com'rs v. Jackson County Com'rs, 75 N.C. 240, 240

---

[2]A determination of the availability of a setoff under nonbankruptcy law is "determined in accordance with the law of the place where the operative facts transpired." Carolina Acoustical and Flooring, 2008 WL 2369599, at *3 (quoting 5 Collier on Bankruptcy ¶ 553.04, p. 553.64).  Here, that means that North Carolina law is applicable, as the operative facts of this case transpired in North Carolina.

(1876)("A payment voluntarily made, with a knowledge of all the facts, cannot be recovered back, although there was no debt."); Boney v. Central Mut. Ins. Co. of Chicago, 197 S.E. 122, 126 (N.C. 1938); Progressive American Ins. Co., Inc. v. Geico General Ins. Co., 637 S.E.2d 282, 284 (N.C. App. 2006)("Subrogation is not generally decreed in favor of a 'volunteer' who, without any moral or other duty, pays the debt or discharges the obligation of another[.]  However, the doctrine of equitable subrogation may be invoked if the obligation of another is paid by the plaintiff for the purpose of protecting some real or supposed right or interest of his own.").

As reflected in the foregoing authorities, in order to establish a nonbankruptcy right of setoff, the defendants are required to show that they are entitled to recover from EBWL based upon the transactions in which indebtedness of the Debtor was refinanced.  The record now before the court is insufficient to make such a showing.  Additional facts are needed in order for a determination to be made as to the circumstances under which the indebtedness of Debtor was paid or otherwise removed and whether such was voluntary or under circumstances that give rise to an obligation on the part of the Debtor to repay one or more of the defendants.  The absence of such essential facts means that the defendants are not entitled to summary judgment with respect to their setoff defense.

There are other deficiencies, as well, in the evidence relied upon by the defendants. It appears that the obligations of EBWL under lease contracts with Information Leasing Corporation ("ILC") and US Bank ("USB") were removed as a result of a loan obtained from First Citizens Bank by Nsite Management, LLC ("Nsite'). It also appears that EBWL's obligations under a lease with Fleet Capital were removed as the result of a loan from FNB Southeast Bank obtained by Nsite and certain entities who are not parties to this proceeding. Since Nsite was the only defendant that was a borrower on the loans that removed these EBWL obligations, Nsite is the only defendant that could claim a setoff for the removal of these debts. Although CCSEA apparently later paid off Nsite's debt on the First Citizens loan from proceeds from another loan, CCSEA did not directly pay the obligations of EBWL under the leases. This sort of "triangular setoff" where A offsets an obligation owed to B against B's debt to C is generally not allowed under nonbankruptcy law. 5 <u>Collier on Bankruptcy</u> ¶ 553.03[3][b], p. 553-31 (15th ed. rev. 2008). A review of North Carolina law did not reveal any cases involving triangular setoff. However, because North Carolina nonbankruptcy setoff law is for the most part in accord with general nonbankruptcy setoff law, it seems safe to predict that North Carolina also would not allow triangular

setoff.[3]  Because it has not been shown that CCSEA directly paid EBWL's debts arising from the ILC lease, USB lease, or Fleet lease, it cannot at this juncture claim setoff based upon the removal of the EBWL debt under the ILC, USB and Fleet leases.

Another obligation of EBWL involved in defendants' setoff defense is EBWL's obligation under a loan from First Union Bank that was paid off using a portion of the proceeds from a loan from Wachovia Bank obtained by EBWL, CCSEA, and other entities that are not parties to this proceeding.  Because EBWL was one of the borrowers from Wachovia, its liability stemming from the First Union loan was not removed by this Wachovia loan.  A later refinancing obtained from Wachovia by CCSEA and other entities who are not parties to this proceeding did pay off the balance then owed on the earlier Wachovia loan.  However, there is a genuine issue of fact as to the extent to which this removal of debt would give rise to a right of setoff in favor of CCSEA.  At the time of the first Wachovia loan, EBWL's debt on the First Union loan apparently was $2,019,257.56.  The borrowers on the initial Wachovia loan borrowed $7.3 million, and used $2,019,257.56 of the loan proceeds to pay off the First Union indebtedness.  This left

---

[3] Even in the event that North Carolina were to allow it, triangular setoff is generally not allowed for the purposes of § 553.  5 Collier on Bankruptcy ¶ 553.03[3][b], p. 553-31. Therefore, even were CCSEA able to establish it had nonbankruptcy law setoff claims, it would not be able to satisfy § 553 and would therefore not be entitled to setoff against the ILC Lease, USB Lease, or Fleet Lease debts of EBWL.

almost $5.3 million over and above the amount required to pay off the First Union indebtedness.  The court has been unable to find any explanation in the record as to who received the remaining $5.3 million of loan proceeds or how such proceeds were utilized.  By the time of the Wachovia refinancing in which the first Wachovia loan was paid off, the balance owed on that Wachovia loan had been paid down to $2,800,480.  This indicates that approximately $4.5 million of the first Wachovia loan had been repaid by someone.  The court has been unable to discern from the record who among the various obligors (which included the Debtor) paid down the loan balance.  This means that there is an insufficient factual basis in the record to support the conclusion that CCSEA is entitled to a setoff as a result of the foregoing transactions involving the First Union and Wachovia loans.  It follows that CCSEA is not entitled to a summary judgment claim of setoff against the EBWL debt originating from the First Union loan that was ultimately removed.

In addition to the setoff defense, the defendants also made arguments that were specific to each of the claims asserted by the plaintiff that will be addressed separately as follows.

2.  First Claim for Relief

Plaintiff's first claim for relief is based upon a contract that was entered into by the Debtor and Nsite on April 17, 2003. This contract provides that Nsite would "take over the collection

of payments from doctors and companies with whom [Debtor] has contracts to supply eye laser machinery, to properly deposit said collections, and to pay appropriate leasing companies as hereinafter designated by [Debtor]." The contract further provided that Nsite would "retain 10% of all collections from said doctors and businesses as collected by Nsite." According to the evidence relied upon by the plaintiff, employees of the Debtor then became employees of Nsite and thereafter performed essentially the same work they formerly performed as employees of the Debtor (including collection of amounts due under the Debtor's equipment leases) except that the collections were deposited into the Nsite bank account rather than the Debtor's bank account as such collections had been deposited before the April 17 contract. Plaintiff maintains that there was no legitimate business purpose for the contract and that it was entered into in order to hinder and delay creditors of the Debtor. Defendants are correct that the record reflects that Nsite was never paid a 10% commission. However, the record also contains evidence that after the Debtor entered into the April 17 contract, Nsite began to collect the lease payments from the doctors and companies with whom the Debtor had contracts and that payments directly to the Debtor dwindled to nothing. Plaintiff's claim is not limited to any commissions that were paid to Nsite, but also seeks to recover the amounts that Nsite managed to collect by means of the contract. To the extent that the

contract amounted to a transfer of the Debtor's business and receivables to Nsite, the plaintiff maintains that such transfer was without supporting consideration and was a fraudulent transfer pursuant to section 544(b) of the Bankruptcy Code and N.C. Gen. Stat. § 39-23.1, et. seq.

It is undisputed that Nsite was not paid a 10% commission on the collections from doctors and companies to whom eye laser machinery was leased. Thus, to the extent that the First Claim seeks recovery of commissions retained by Nsite, the defendants are entitled to summary judgment. As to the remaining relief sought in the First Claim, the evidence in the record, taken in the light most favorable to the plaintiff, is sufficient to support a claim for such relief, and the motion therefore shall be denied as to the relief sought in the First Claim other than recovery of commissions allegedly paid to Nsite.

3.   Second Claim for Relief

In the Second Claim, the plaintiff seeks to recover transfers of funds from the Debtor to CCSEA from 1999 through April 7, 2003, on the theory that such transfers were fraudulent transfers pursuant to N.C. Gen. Stat. § 39-23.1, et. seq., and section 544(b) of the Bankruptcy Code. The evidence submitted by the plaintiff supports the claim as to $390,667.36 that was transferred from the Debtor to CCSEA prior to April 7, 2003. In arguing that summary judgment nonetheless should be granted, the defendants rely upon

- 11 -

the fact that the record also shows that during the same period, $443,105.20 was transferred from CCSEA to the Debtor. Defendants argue that these transfers establish that CCSEA has more than repaid the $390,667.36 that it received from the Debtor. However, there is evidence that during the period in question CCSEA was indebted to the Debtor for the lease of equipment from the Debtor and that payments were made by CCSEA pursuant to its obligations under the equipment leases. It is unclear from the record now before the court as to what portion of the $443,105.20 payments relied upon by the defendants were made to repay loans received from the Debtor and what portion of the payments were made in response to other types of obligations such as lease obligations owing from CCSEA to the Debtor. The court therefore concludes that the record is insufficient to support summary judgment for the defendants as to the Second Claim.

4. Third Claim for Relief

According to the plaintiff's brief, the Third Claim is a cause of action "for alter ego as to Defendant Nsite." Contrary to the apparent premise underlying this assertion, alter ego is not a stand-alone claim for relief. See Peacock v. Thomas, 516 U.S. 349, 354, 116, S.Ct. 862, 866, 133 L.Ed.2d 817 (1996)("Piercing the corporate veil is not itself an independent ERISA cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'"); Local 159 v. Nor-Cal Plumbing, Inc., 185 F.3d 978,

- 12 -

985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."); In re Grothues, 266 F.3d 334, 337-38 (5th Cir. 2000) (alter ego theory is a remedy to enforce a substantive right, not an independent cause of action); Western Oil & Gas. JV, Inc. v. Griffiths, 91 Fex. Appx. 901, 904 (5th Cir. 2003) ("Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action."); Hennessey's Tavern, Inc. v. American Air Filter Co., Inc., 204 Cal. App. 3d 1351, 1359 (1988) (alter ego is "not itself a claim for substantive relief," but rather is a means to "disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice.").   The applicable rule was summarized in Fletcher Cyclopeida of the Law of Corporations:

> A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural.  A finding of fact of alter ego, standing alone, creates no cause of action.  It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation.  An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.

1 Fletcher Cyclopedia of the Law of Corporations § 41.10.

The North Carolina courts apparently have not addressed this issue.  In federal proceedings in which state law is controlling and there is no state law on the issue presented, the federal court "must . . . offer its best judgment about how [the] state's highest court would rule . . ., giving appropriate weight to any opinions of [the] state's intermediate appellate courts." Anderson v. Sara Lee Corp., 508 F.3d 181, 190 (4th Cir. 2007), citing Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999); Phipps v. Robinson, 858 F.2d 965, 968 (4th Cir. 1988).  It is this court's best judgment that the North Carolina courts would follow the above cases and adopt the rule that alter ego is not a stand-alone cause of action.  Because there is no separate, stand-alone cause of action for alter ego under applicable law, the defendants are entitled to summary judgment as a matter of law with respect to plaintiff's Third Claim.  However, this does not necessarily mean that the plaintiff is precluded from invoking alter ego principles in order to extend liability on any of plaintiff's stand-alone causes of action that remain after summary judgment.

5.  Fourth Claim for Relief

The Fourth Claim is against CCSEA and seeks to recover $1,243,300 that was transferred from Nsite to CCSEA within one year prior to Debtor's chapter 11 filing. The plaintiff contends that these transfers should be avoided as fraudulent transfers pursuant

to section 548(a)(1)(A) of the Bankruptcy Code.    Under section 548(a), the Trustee is given the power to avoid fraudulent transfers which have "the effect of improperly placing assets beyond the reach of creditors." 5 Collier on Bankruptcy ¶ 548.01 (15th ed. rev. 2008).    The applicable language of section 548(a)(1)(A)[4] provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;

In order to avoid a transfer pursuant to section 548(a)(1)(A), a trustee must show (1) a transfer of Debtor's property (2) made one year prior to filing (3) with actual intent to hinder, delay or defraud a creditor.    While it is undisputed that the transfers at

---

[4] The Debtor's bankruptcy petition was filed 1/24/05, prior to both the enactment (4/20/05) and effective date (10/17/05) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").    BAPCPA amended Section 548(a)(1) to allow a trustee to avoid fraudulent transfers occurring within two years before the filing of the petition.    Although this adversary proceeding was filed 1/18/07, well after BAPCPA was enacted, the one year look-back period of the prior code applies because the underlying case was filed prior to BAPCPA.    See In re Scheu, 356 B.R. 751, 751 (Bankr. D. Idaho 2006) (holding that pre-BAPCPA law applied in case where underlying case was filed pre-BAPCPA and the adversary proceeding sub judice was filed post-BAPCPA); In re Kilroy, 354 B.R. 476, 498 (Bankr. S.D. Tex. 2006).

issue occurred with one year prior to filing, the defendants deny that the transfers involved property of the Debtor or that the transfers were made with intent to hinder, delay or defraud a creditor.

The plaintiff's theory in this claim is that the funds that were transferred by Nsite were lease payments made by lessees under equipment leases owned by the Debtor which were collected by Nsite pursuant to the management agreement between the Debtor and Nsite. According to the plaintiff, the management agreement did not transfer an ownership interest to NSite and the funds collected by NSite remained the property of the Debtor. There is evidence in the record which supports this contention, although when the record is viewed as a whole, it cannot be said that the only conclusion that could reasonably be drawn is that the funds transferred by Nsite were property of the Debtor. The same is true as to whether the transfers at issue were made with intent to hinder, delay or defraud a creditor. The plaintiff relies upon circumstantial evidence as establishing such intent. Taken in the light most favorable to the plaintiff, the party opposing the motion for summary judgment, the evidence is sufficient to support a finding in favor of the plaintiff on the issue as to whether the transfers relied upon by the plaintiff were made with an intent to hinder, delay or defraud creditors.

In evaluating a motion for summary judgment, a court "must

consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." In re French, 499 F.3d 345, 352 (4th Cir. 2007). From the record now before the court, a jury could reasonably find in favor of the plaintiff on whether the transferred funds were EBWL funds and whether there was an intent to hinder, delay or defraud. It follows that the defendants are not entitled to summary judgment with respect to the Fourth Claim for Relief.

      6.  Fifth Claim for Relief

The Fifth Claim involves an alternative theory for the recovery of the same funds involved in the Fourth Claim from CCSEA. The alternative theory involved in the Fifth Claim is based upon section 547 of the Bankruptcy Code and asserts, alternatively, that such transfers may be avoided and recovered as preferential under section 547. Defendants contend that they are entitled to summary judgment because there is insufficient evidence to support a finding that the transfers by Nsite involved property of the Debtor. This argument fails for several reasons. As previously noted, the record contains evidence that, taken in the light most favorable to the plaintiff, is sufficient to support a finding that the funds at issue were funds collected under the Debtor's equipment leases and that the contract between the Debtor and Nsite was one in which Nsite was to act on behalf of the Debtor in

- 17 -

collecting and paying out the lease payments, rather than transferring beneficial ownership of the leases to Nsite. As to whether the record contains evidence of an antecedent debt that was paid, the defendants argue that large amounts of Debtor's indebtedness were satisfied through refinancing obtained by the defendants and that the Debtor became indebted to them as a result of the refinancing transactions. However, there also is evidence that the funds were used to pay obligations of the Debtor on which the defendants were co-obligors. Taken in the light most favorable to the plaintiff, the evidence thus is sufficient to support the Fifth Claim as an alternative means of recovering for the transfers described in the Fifth Claim.

7.  Sixth Claim for Relief

In the Sixth Claim for relief, the plaintiff alleges that the transfer of a total of $646,500 from NSite to CCSEA should be avoided pursuant to section 549 of the Bankruptcy Code. Section 549 allows the Trustee to avoid transfers of property of the bankruptcy estate that occur after the commencement of the case and that were not authorized under the Bankruptcy Code or by the court. One of the requirements for a claim under section 549 is that the transfer involve property of the estate. See In re Merry-Go-Round Enterprises, Inc., 400 F.3d 219, 224 (4th Cir. 2005)(the elements required under section 549 are "(1) a transfer, (2) of property of the estate, (3) made after commencement of the case, and (4) that

is not authorized under the Bankruptcy Code or by the bankruptcy court"). As was the case with the pre-petition transfers by Nsite, there is an issue of fact as to whether the post-petition transfers from Nsite to CCSEA involved funds that belonged to the Debtor. According to the plaintiff's evidence, the management agreement did not transfer an ownership interest to NSite and the funds collected by NSite remained the property of the Debtor. While this is not the only conclusion that could be drawn from the record as a whole, it is sufficient to repel the defendants' motion for summary judgment as to the Sixth Claim.

    8.  Seventh Claim for Relief

The Seventh Claim is asserted against defendants McDaniel and Epes in their capacity as directors and officers of the Debtor and is based upon an alleged breach of the fiduciary duties owed by them as such to the Debtor and to creditors of the Debtor. As directors, these defendants were obligated to discharge their duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner they reasonably believed to be in the best interest of the Debtor. N.C. Gen. Stat. 55-8-30. A director's duty of good faith requires that directors discharge their responsibilities as directors honestly, conscientiously, fairly, and with undivided loyalty to the Debtor. See Robinson on North Carolina Corporation Law, § 14.02 (7th ed. 2007). The duty to act in good faith

requires the individual loyalty of a director to the corporation which prohibits a director from using his position for his own personal gain to the detriment of the corporation. Id. at § 14.04. On the other hand, directors of a corporation ordinarily do not owe a fiduciary duty to creditors of a corporation. Keener Lumber Co. v. Perry, 560 S.E.2d 817, 824 (N.C. App. (2002). An exception to this general rule, however, may arise when a corporation is insolvent, "is in declining circumstances and verging on insolvency," or "where such facts establish circumstances that amount 'practically to a dissolution.'" Id. at 824-25. There is evidence in the record that, taken in the light most favorable to the plaintiff, would support a finding that defendants McDaniel and Epes breached the duties owed to the Debtor as directors and officers in a manner that resulted in injury to the Debtor. Such evidence includes the evidence tending to show that they caused the Debtor to transfer large amounts to CCSEA when it did not serve the interest of the Debtor to do so and that they caused the Debtor to enter into a contract with Nsite that had no legitimate purpose and which served only to divert the Debtor's lease revenue to Nsite in order to mislead, hinder and delay creditors and that they permitted or caused such funds to be diverted to CCSEA. The evidence also would support a finding that at the time of the contract with Nsite, the Debtor was unable to pay its obligations as they came due and was in precarious condition and that the

transfers of funds to Nsite continued even after the Debtor had filed for bankruptcy.   While the defendants have pointed to contrary evidence, the result is that there are material issues of fact that rule out the grant of summary judgment as to the Seventh Claim.

9.  Eighth Claim for Relief

The plaintiff's Eighth Claim is for aiding and abetting breach of fiduciary duty.   The defendants named in the Eighth Claim are McDaniel, Epes, Atta, Gislimberti, Nsite and CCSEA.   Plaintiff's allegation is that these defendants aided and abetted defendants McDaniel and Epes in violating their fiduciary duties as officers and directors of the Debtor.   Defendants seek summary judgment in favor of defendants McDaniel, Epes, Atta and Gislimberti.

The elements of aiding and abetting breach of fiduciary duty are:   (1) the existence of a breach of fiduciary duty by the primary party; (2) actual knowledge of such violation by the aiding and abetting party; (3) substantial assistance by the aider and abetter in the breach of fiduciary duty by the primary party; and (4) resulting injury and damage to the plaintiff.   See In re EBW Laser, Inc., Adversary No. 07-2004, 2008 WL 1805575, at *1 (Bankr. M.D.N.C. Apr. 21, 2008).   Defendants Atta and Gislimberti are entitled to summary judgment because the plaintiff has failed to produce evidence of facts that show the second and third elements of a claim for aiding and abetting breach of fiduciary duty.

- 21 -

First, the plaintiff has not produced evidence that shows Atta or Gislimberti had knowledge that Epes and McDaniel were violating their fiduciary duties. Second, the plaintiff has not established that Atta or Gislimberti provided substantial assistance in a breach of fiduciary duty by defendants McDaniel and Epes.

Ms. Atta became employed at EBWL in August 1999, and Ms. Gislimberti began work at EBWL in late summer or early fall 2000. By December 2002, Atta and Gislimberti were the only two employees of EBWL. Both Atta and Gislimberti reported to Mr. McDaniel throughout their time at EBWL. According to their affidavits, their duties at EBWL included answering telephones, monitoring accounts receivable and accounts payable, making routine bank transactions, and dealing with EBWL's lessees. The record shows that Atta and Gislimberti were ministerial employees of EBWL who had little, if any, discretion while employed at either the Debtor or Nsite, and did not function in any decision-making capacity at EBWL.

In April or May 2003, Nsite was formed by defendants Epes and McDaniel, with Atta, Gislimberti, McDaniel and Epes as managers/members.[5] On April 17, 2003, Nsite, under the direction of McDaniel and Epes, entered into the management agreement with EBWL under which it took over the day-to-day management of EBWL,

---

[5] There is conflicting evidence in the record as to what percentage of ownership the four members held at what time.

and in exchange was to retain 10% of the amounts collected from EBWL's lessees. It is uncontroverted that Nsite never collected this 10%. It is also uncontroverted that while Atta and Gislimberti may have held the titles of "manager" at Nsite, their job responsibilities remained largely the same as when they worked for EBWL. McDaniel retained management responsibilities, with Atta and Gislimberti following his directions and instructions. The record shows that Atta and Gislimberti's actions in making transfers and signing documents were at the behest of McDaniel. The fact that Atta and Gislimberti, as subordinate employees, followed McDaniels' instructions in performing their ministerial duties is insufficient to subject them to liability. Accordingly, defendants Atta and Gislimberti are entitled to summary judgment with respect to plaintiff's Eighth Claim.

As to defendants McDaniel and Epes, the claim against them for, in effect, aiding and abetting themselves in breaching their fiduciary duties is redundant and adds nothing beyond the claim asserted against them in the Seventh Claim for breach of fiduciary duties. See Sompo Japan Ins. Inc. v. Deloitte & Touche, LLP, 2005 WL 5190706 (N.C. Super. Ct. June 10, 2005). Summary judgment therefore also shall be granted in favor of defendants McDaniel and Epes as to the Eighth Claim.

10. Ninth Claim for Relief

The Ninth Claim seeks recovery based upon unfair and deceptive

trade practices by defendants McDaniel, Epes, Atta, Gislimberti and CCSEA and is based upon the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, <u>et. seq.</u> ("UDTPA"). Under North Carolina law, proof of an independent tort is sufficient to make out a separate claim under UDTPA.  <u>See Sara Lee Corp. v. Carter</u>, 519 S.E.2d 308, 311-12 (N.C. 1999)(finding that the breach of a fiduciary duty by an employee also gave rise to a UDTPA claim); <u>Drouillard v. Keister Williams Newspaper Services, Inc.</u>, 423 S.E.2d 324, 326-27 (N.C. App. 1992)(violation of Trade Secrets Protection Act may also be a violation of UDTPA).  As to the defendants other than Atta and Gislimberti, plaintiff has produced evidence of independent torts.  As to such defendants, the evidence thus is sufficient to withstand such defendants' motion for summary judgment.  For the same reasons discussed regarding the Eighth Claim, the evidence is not sufficient to sustain a claim against defendants Atta and Gislimberti for unfair and deceptive trade practices and summary judgment in their favor shall be granted as to the Ninth Claim.

   11.  Tenth Claim for Relief

   The Tenth Claim is based upon an alleged civil conspiracy. North Carolina law does not recognize a claim merely for civil conspiracy, but does recognize a claim for damages caused by acts carried out pursuant to a conspiracy.  Such a claim arises where there is an agreement between two or more persons to do an unlawful

act or to do a lawful act in an unlawful manner and, as a result of acts done in furtherance of and pursuant to the agreement, damage occurs to the plaintiff. See Dickens v. Puryear, 456 S.E.2d 325, 337 (N.C. 1981); Fox v. Wilson, 354 S.E.2d 737, 743 (N.C. App. 1987). In such a case, the elements of a claim for civil conspiracy are: (1) that the defendants agreed to engage in tortious conduct; (2) that one of the defendants committed an overt tortious act in furtherance of the agreement; and (3) that the plaintiff suffered damages from the act. See Neugent v. Beroth Oil Co., 560 S.E.2d 829, 839 (N.C. App. 2001); Nye v. Oates, 385 S.E.2d 529, 531-32 (N.C. App. 1989).

While the record contains no direct evidence of an agreement to hinder or delay creditors, to make fraudulent transfers of funds of the Debtor or engage in the other conduct involved in the other claims, there is circumstantial evidence that defendants McDaniel and Epes and the entities for whom they acted, did so pursuant to an understanding and agreement as well as evidence of overt acts by such parties that resulted in injury to the Debtor. No such evidence has been produced as to defendants Atta and Gislimberti. Accordingly, summary judgment shall be granted in favor of defendants Atta and Gislimberti as to the Tenth Claim, but shall be denied as to the remaining defendants.

                              CONCLUSION

An order ruling on defendants' motion for summary judgment in

accordance with the foregoing discussion is being entered contemporaneously with the filing of this memorandum opinion.

This __15th__ day of January, 2009.

William L. Stocks

WILLIAM L. STOCKS
United States Bankruptcy Judge

## PARTIES IN INTEREST

Bradley E. Pearce, Esq.
401 S. Tryon Street, Suite 2600
Charlotte, NC 28202-1935

Charles M. Ivey, III, Esq.
Edwin R. Gatton, Esq.
P.O. Box 3324
Greensboro, NC 27402