UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                                    )
                                          )
EBW Laser, Inc.,                          )        Case No. 05-10220C-7G
                                          )
            Debtor.                       )
_____       )
                                          )
EBW, Inc.,                                )        Case No. 05-10221C-7G
                                          )
            Debtor.                       )
_____       )
                                          )
Charles M. Ivey, III,                     )
Trustee for EBW Laser,                    )
Inc., and EBW, Inc.,                      )
                                          )
            Plaintiff,                     )
                                          )
v.                                        )        Adversary No. 07-2004
                                          )
James Mark McDaniel, Jr.;                 )
C. Richard Epes; Nsite                    )
Management, LLC; Nsite                     )
Laser, LLC; and Central                   )
Carolina Surgical Eye                     )
Associates, P.A.,                         )
                                          )
            Defendants.                    )
                                          )

MEMORANDUM OPINION

The motion now before the court was filed by the defendants on

March 23, 2010 ("Motion"). Although captioned as a "Motion to

Compel Discovery", the Motion primarily is a motion for sanctions

against the plaintiff.  The sanctions sought by the defendants are

either an order striking the plaintiff's complaint or disallowance

of the use of all discovery obtained by the plaintiff.

The Motion recites that it was filed pursuant to Bankruptcy

Rules 7026 and 7037 and Rules 26(a)(2), 26(e), 37(a)(3)(A) and (B), and 37(a)(4) of the Federal Rules of Civil Procedure. Bankruptcy Rule 7037(a)(3)(A) provides that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Rule 7037(a)(3)(B) provides that a party seeking discovery "may move for an order compelling an answer, designation, production, or inspection." Rule 7026(a)(2) requires a party to disclose to other parties the identity of any expert witness it may use at trial and to provide other parties with a written report from the expert witnesses identified. Rule 7026(a)(3) requires a party also to provide to other parties the pretrial disclosures described in Rule 7026(a)(3) consisting of the name and address of each witness that may be called at trial, a designation of the witnesses who may testify by deposition and an identification of each exhibit that may be offered at trial. The Motion apparently is not based upon a failure to comply with the foregoing disclosure requirements. The identity of plaintiff's expert witness was disclosed and a written report from each of the experts was provided to the defendants during discovery and the experts thereafter were deposed by defendants. Nor does it appear that the defendants are seeking to require the final pretrial disclosures described in Rule 7026(a)(3) nor the type of relief described in Rule 7037(a)(3)(B). Instead, it appears that the Motion involves an alleged failure to

supplement discovery as required under Rule 7026(e). Rule 7026(e) is entitled "Supplementing Disclosures and Responses" and provides as follows:

> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.
>
> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or correction to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

The failure to supplement relied upon by the defendants for the imposition of the requested sanctions is described in the Motion as "Plaintiff's failure to supplement earlier disclosures and other discovery responses" . . . by failing "to disclose that 2002/2003 EBW Laser, Inc. tax documents were not complete tax returns but were only 'roll-forwards' obtained by his law firm from Bernard Robinson[1] on March 29, 2009 . . . ." Alternatively, the motion seeks "an order compelling Plaintiff to supplement his

---

[1]Identified in the motion as the accounting firm of Bernard Robinson & Company, LLP.

earlier expert witness disclosures and responses to Defendants'
discovery requests made in regard to documents provided to and
relied upon by Plaintiff's experts so as to divulge the true nature
of the 2002 and 2003 EBW Laser, Inc. tax documents and the
circumstances under the same were obtained."

I.   The 2002 and 2003 Tax Documents

It is clear from the record and undisputed that the 2002 and
2003 "tax documents" were obtained from Bernard Robinson & Company
after they were computer generated by Bernard Robinson from
information that Bernard Robinson received when it prepared the
2001 tax return for EBW Laser, Inc. ("EBW"), and are not the actual
tax returns filed by EBW for 2002 and 2003. This information is
contained in the affidavit of Edwin R. Gatton that was filed with
the court and served on the defendants on March 5, 2010,
approximately two weeks before the Motion was filed.  In that
regard, the affidavit states that the "tax documents" were "partial
returns that were computer generated from information the Bernard
Robinson firm compiled in preparing the 2001 return for EBW Laser,
Inc."  However, it also is clear from the record that prior to
receiving the foregoing information regarding the tax documents,
Mr. Gatton assumed incorrectly that the 2002 and 2003 tax documents
at issue had been produced by the defendants and, based on that
assumption, at several points during discovery represented that the
tax documents had been produced by the defendants.   These

- 4 -

representations occurred during the depositions of Diane Atta and Daniel Guerrini, and in a brief that was filed in this proceeding. Further, based on the same incorrect assumption, Mr. Gatton also provided the tax documents to plaintiff's expert witnesses as being tax documents provided by the defendants. However, at the time of this conduct on the part of Mr. Gatton, he was not aware that the tax documents had come from Bernard Robinson & Company and were not the actual tax returns that were filed by EBW in 2002 and 2003. Mr. Gatton's affidavit sets forth in detail when and how the tax documents were obtained, the circumstances leading to his mistaken assumption that the tax documents were produced by the defendants and when and how he learned of his mistake. It is just as clear from the record that the defendants were not misled or deceived by Mr. Gatton's mistake regarding the tax documents; but, instead were fully aware from the first occasion that the tax documents were brought forward that they were not the actual tax returns of EBW. The record reflects that months before the Motion was filed, with full knowledge that they had not produced the tax documents and that the tax documents were not copies of the actual tax returns filed by EBW, the defendants consciously elected not to seek further discovery or relief regarding the tax documents. Additionally, to the extent that the plaintiff was required by Rule 7026(e) to provide a supplement or correction regarding the 2002 and 2003 tax documents, the affidavit from Mr. Gatton, which was

filed two weeks before the Motion was filed, was a timely and sufficient written supplement that fully complied with Rule 7026(e). The defendants therefore are not entitled to have the sanctions sought in their Motion imposed against the plaintiff as a result of the asserted failure by the plaintiff to disclose that the tax documents were tax documents obtained from Bernard Robinson & Company and are not EBW's actual tax returns.

Before proceeding with a more detailed discussion of the tax documents, some background information is helpful. This adversary proceeding was filed on January 18, 2007. The plaintiff is the chapter 7 trustee for EBW Laser, Inc. and EBW, Inc., the Debtors in the underlying chapter 7 cases. Defendants McDaniel and Epes were officers and principals of the Debtors and also are officers and principals of one or more of the corporate defendants.

The complaint includes claims based upon alleged fraudulent transfers from EBW to the defendants, alter ego liability of the defendants, preferential transfers from EBW to the defendants, breach of fiduciary duties by the individual defendants as officers of EBW and unfair and deceptive trade practices. There has been extensive discovery that extended over a period of more than eighteen months and which involved the production of hundreds of pages of documents as well as a number of depositions, including lengthy depositions from the plaintiff's two proposed expert witnesses, Thomas J. McGoldrick and Daniel E. Guerrini.

Throughout this adversary proceeding, the primary attorney for the plaintiff has been Edwin Gatton, a member of the law firm of Ivey, McClellan, Gatton & Talcott. At various times, Mr. Gatton has been assisted by John Blust, also an attorney with Ivey, McClellan, Gatton & Talcott.

The "2002 and 2003 tax documents" referred to in the Motion are two separate documents, one designated for the year 2002 and the other designated for the year 2003. The first page of each document is IRS Form 1120 which is entitled "U.S. Corporation Income Tax Return." EBW Laser, Inc. is shown as the taxpayer and various figures have been inserted on the pertinent lines of the form. Various schedules are attached to each Form 1120 which likewise contain various words and figures that have been inserted on the schedules. At the bottom of the first page of each document, Bernard Robinson & Company L.L.P. is shown as the preparer of the form, but there is no signature on either the line for the taxpayer or the line for the preparer. The date inserted at the bottom of the first page of each of the documents is "3/27/08".

These documents first came into the possession of plaintiff's attorneys on March 27, 2008, when the documents were provided to Mr. Blust by the accounting firm, Bernard Robinson & Company, L.L.P. The documents were sent to Blust in response to his request that the accountants provide any financial information it had

- 7 -

pertaining to EBW.    Blust apparently was aware that Bernard
Robinson & Company had performed services for EBW, which prompted
his call to the accounting firm.    The email from Bernard Robinson
& Company pursuant to which the two documents were sent to Blust
stated:

> I have attached a copy of the 2002 and 2003 US
> Income Tax Returns which BRC prepared.  We, of
> course, have no way of knowing that this
> returns were in fact filed by the client.  Let
> me know if you have any questions.

There is nothing in this email that indicated that the
documents were anything other than a copy of the "2002 and 2003 US
Income Tax Returns which BRC [Bernard Robinson & Company] prepared"
for EBW and there is no evidence that Blust was told that the
documents were not the actual tax returns prepared for EBW.  Upon
receipt of the tax documents by Blust, the tax documents then became
a part of the large bank of documents assembled by the attorneys
from the documents that were exchanged by the parties and obtained
from various sources during the course of the extensive discovery
in this proceeding.

Thereafter, Mr. Gatton determined the documents to be furnished
to plaintiff's experts and at some point prior to the end of July
of 2008, various documents, including the tax documents, were
provided by Mr. Gatton to plaintiff's experts, Thomas J. McGoldrick
and Daniel E. Guerrini.  At that point, Gatton assumed that the tax
documents had been produced by the defendants because he was aware

that there had been a request that the defendants produce tax returns for 2002 and 2003 and he found the 2002 and 2003 tax documents among other documents that he was aware had been produced by the defendants.

Both experts provided expert reports in late May or early June of 2008, which were provided to counsel for the defendants as a part of the discovery in this proceeding.  In their reports, the two experts listed the documents they reviewed in connection with furnishing their opinions and each expert's list of documents included the tax documents obtained from Bernard Robinson, which are listed in their reports as being the 2002 and 2003 "tax returns" of EBW.

Messrs. Guerrini and McGoldrick were deposed by the defendants during July 28-31, 2008.  During the course of the Guerrini deposition, the tax documents were produced by either Mr. Guerrini or Mr. Gatton.  In response to the tax documents being referred to as "purported" tax returns, Mr. Gatton asserted that the tax documents had been produced by the defendants.  Mr. McDaniel was present at the deposition and had an opportunity to examine the tax documents at that time.  According to a verified complaint that later was filed by Mr. McDaniel and Dr. Epes in June of 2009, when he examined the tax documents at the Guerrini deposition he immediately observed a number of "red flags" and concluded at that time that the tax returns were "specious."  The red flags included

his actual knowledge that the 2002 and 2003 tax returns for EBW had been prepared by a different accountant and not by Bernard Robinson & Company.

Events following the Guerrini deposition likewise reflect that the defendants were aware that the tax documents were not EBW's actual returns.  On August 15, 2008, after the close of discovery, the defendants filed a Motion in Limine to Exclude the Report and Proposed Expert Testimony of Daniel F. Guerrini (Docket #118).  The motion challenged all of the opinions expressed by Guerrini on various grounds.  One of the grounds stated for defendants' challenge to Guerrini's opinion that Nsite Laser, LLC was a "front company" or alter ego for EBW was that such opinion was based on "incomplete and unreliable evidence."  The incomplete and unreliable evidence referred to in defendants' motion included the 2002 and 2003 "tax returns" that were produced at the Guerrini deposition. Regarding these documents, defendants' motion states:

> In addition, the Front Company Opinion is based on federal income tax returns for 2002 and 2003 that Guerrini apparently believed to have been filed by EBW Laser (Ex. B, vol. II, pp. 269-275).  The alleged EBW Laser tax returns were not produced to Defendants, were unsigned, and stated that they were prepared by Bernard Robinson & Company (an alleged creditor of EBW that filed a proof of claim indicating that it stopped performing services for EBW Laser in September of 2002), **and were dated March 27, 2008.**  (Emphasis supplied in the motion).

The brief later filed by the defendants in support of the motion in limine (Docket #157) asserts that Guerrini's opinion was

"tainted" by his reliance on the "inadmissible and unauthenticated"

tax returns, and states:

> In this case, Guerrini testified that he relied
> on unsigned and incomplete 2002 and 2003
> federal income tax returns for EBWL, dated
> March 27, **2008,** which first surfaced at
> Plaintiff's deposition of defendant Diane Atta
> (true copies of these documents, as produced by
> Ivey's counsel at Diane Atta' deposition and as
> relied upon by Guerrini, are attached hereto as
> **Exhibits 3 and 4).** At Ms. Atta's deposition,
> Ivey's counsel stated that the tax returns were
> produced in discovery as a result of a motion
> to compel . . . At Guerrini's deposition,
> Ivey's counsel again stated that these
> purported income tax returns had been produced
> in response to this Court's February 21, 2008
> order. . . . (Emphasis supplied in the brief).

On September 16, 2008, a hearing was held regarding the

defendants' motion in limine. By that time, motions for summary

judgment had been filed by both parties but had not been heard. At

the hearing on September 16, the court ruled that Guerrini's report

would not be considered in ruling on the pending motions for summary

judgment but did not rule on the motion to the extent that it sought

to bar Guerrini from testifying at trial, leaving that aspect of the

motion for further hearing by the judge that ultimately would be

presiding at the trial of any claims remaining after the motions for

summary judgment were resolved and a decision had been made as to

whether this adversary proceeding would be withdrawn to the district

court.

The hearing on the motions for summary judgment was held on

October 21, 2008. On January 15, 2009, a memorandum opinion was

filed and orders were entered denying the plaintiff's motion for summary judgment, granting the defendants' motion for summary judgment as to certain of plaintiff's claim and denying the motion as to the remaining claims against the defendants.

On February 17, 2009, the defendants filed a renewed motion to withdraw the reference as to this adversary proceeding (Docket #208). No relief was sought by the defendants regarding the disputed 2002 and 2003 tax documents between the ruling on the summary judgment motions and the filing of the motion to withdraw the reference nor was any issue regarding the 2002 and 2003 tax documents raised by the defendants in the motion to withdraw the reference. Instead, the motion to withdraw the reference states that "[a]ll discovery in this matter has been completed" and that "[t]his matter is now ready for trial. . . ." At the time these statements were made the defendants were fully aware that the tax documents had not been produced by the defendants, that the tax documents were not the actual tax returns for EBW for the years 2002 and 2003, and also were fully aware that the tax documents had been furnished to and considered by plaintiff's expert witnesses. As evidenced by correspondence from the defendants' attorney at the close of discovery, the defendants nonetheless were content to proceed to trial without further inquiry or discovery regarding the tax documents. In particular, in an August 19, 2008 letter to Mr. Gatton (Exhibit F, defendants' Brief in Support of Rule 37 Motion),

- 12 -

after asserting that the tax documents were not prepared for EBW or produced by the defendants during discovery, defendants' attorney stated that he was not going to seek to reopen discovery to reach the issues of "when, why and how the purported 2002 and 2003 tax returns were created or how you obtained them." Consistent with these earlier representations, the defendants filed a designation of record and brief in support of the motion to withdraw the reference, which was followed by the motion to withdraw the reference being docketed in the district court on April 30, 2009.

In June of 2009 the defendants abruptly took an entirely different tack regarding the tax documents. On June 11, 2009, defendants McDaniel and Epes filed a civil action against Messrs. Gatton and Blust and their law firm alleging claims for civil obstruction of justice and conversion. Defendants' obstruction claim included an allegation that plaintiffs' attorneys had engaged in fraudulent conduct, including an allegation that they knew that the tax documents were "bogus" and had used the "bogus tax documents" to "dupe" their own experts and work a fraud on the court in this proceeding. The conversion claim asserted that the plaintiff's attorneys had improperly obtained a copy of Mr. McDaniel's tax returns during discovery.

On July 13, 2009, the state court proceeding filed by McDaniel and Epes was removed to the United States District Court for the Middle District of North Carolina by the attorneys named as

- 13 -

defendants in the suit.  On August 10, 2009, the attorneys filed a motion in the district court to dismiss the suit filed by McDaniel and Epes on the grounds that the suit was barred by the Barton Doctrine[2] under which law suits against bankruptcy trustees and professionals acting on behalf of trustees involving conduct occurring while they are acting within the scope of their duties are barred if filed without obtaining leave of the bankruptcy court.

On January 8, 2010, Magistrate Judge Sharp issued a ruling in which he recommended that the motion to dismiss be granted by the district judge.  This ruling was followed by yet another change of course by McDaniel and Epes.  Rather than continuing to pursue the motion to withdraw the reference which was pending in the district court, McDaniel and Epes withdrew their motion to withdraw the reference on March 4, 2010.  The "basis" cited by the defendants for withdrawing their motion was that "subsequent to the Bankruptcy Court issuing its certification[3] that this adversary proceeding was ready for trial, new issues relating to discovery have arisen that need to be addressed by the Bankruptcy Court prior to this matter

---

[2]Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881); In re Crown Vantage, Inc., 421 F.3d 963 (9th Cir. 2005); Muratore v. Darr, 375 F.3d 140 (1st Cir. 2004); Carter v. Rodgers, 220 F.3d 1249 (11th Cir. 2000)

[3]There was a certification by the Clerk's office that the record required for a hearing on the motion to withdraw was complete.  The certification that this proceeding was ready for trial was made by the defendants in their motion to withdraw the reference which stated that discovery had been completed and that this adversary proceeding was ready for trial.

being ready for trial." The notice of withdrawal did not describe the "new issues" alluded to in the notice. Obviously, however, the issues regarding the 2002 and 2003 tax documents that are referred to in the Motion now before the court were not new issues since they dated back to the Guerrini deposition in July of 2008. Thereafter, notwithstanding the filing of the Gatton affidavit on March 5, 2010, the Motion to Compel was filed by the defendants on March 23, 2010.

## II. The Expert Witness Supplements

As noted previously, the experts' written reports were served on the defendants in June of 2008. The experts, McGoldrick and Guerrini, thereafter were deposed in July of 2008 and were examined regarding the 2002 and 2003 tax documents. During this period, Mr. Gatton remained under the mistaken belief that the tax documents had been produced by the defendants in response to discovery requests in which the plaintiff had sought copies of EBW's tax returns. However, on August 29, 2009, through communications that he had with Bernard Robinson & Company, Mr. Gatton learned that the tax documents had come from Bernard Robinson & Company and were partial returns that Bernard Robinson and Company had generated from information it had compiled in preparing EBW's 2001 tax return. Gatton then began efforts to obtain copies of EBW's filed returns from the Internal Revenue Service and in late October or early November of 2009, Gatton received from the IRS copies of the 2002 and 2003 tax returns that were filed with the IRS by EBW. In

November of 2009, Gatton met with McGoldrick and Guerrini and furnished them with copies of the 2002 and 2003 tax returns that had been obtained from the IRS so that they could determine the impact of the new returns upon the opinions contained in their earlier written reports. Gatton also conferred with the experts several times during December of 2009 regarding the new information contained in the tax returns and in April of 2010 received from McGoldrick and Guerrini supplements to their earlier written reports. (Exhibits I and J, defendants' Brief in Support of Rule 37 Motion). These supplements and copies of the 2002 and 2003 tax returns were served on defendants' attorney later in April of 2010.

Since both McGoldrick and Guerrini have been identified as expert witnesses who may be called to testify at trial and have provided written reports, the nature of the supplementation required regarding Guerrini and McGoldrick is covered by Rule 7026(e)(2). Rule 7026(e)(2) requires that "[a]ny addition or changes" to information contained in an expert's written report be disclosed to the opposing party. Making the filed tax returns available to the two experts in place of the earlier tax documents gave rise to new information that triggered a requirement that the plaintiff provide the defendants with a supplement reflecting the additional information and any change from the opinions contained in the written reports previously provided by the experts. Supplements from each of the experts, together with copies of the filed tax

- 16 -

returns, have been served on the defendants.  This occurred in mid-April of 2010.  The supplements recite that the expert witnesses have reviewed the 2002 and 2003 tax returns and describe the impact upon the information contained in their earlier reports which, in essence, is that the opinions stated in the earlier reports have not changed as a result of the information contained in the filed tax returns.  By serving on the defendants the supplements prepared by the expert witnesses and copies of the actual returns for 2002 and 2003, the plaintiff has made the supplementation required under Rule 7026(e)(2) as to Guerrini and McGoldrick and their written reports.

III.  The Request for Attorneys' Fees

The remaining question involves the timing of the Guerrini and McGoldrick supplements.  This is an issue because the defendants argue that they should recover attorneys' fees pursuant to Rule 7037(a)(5)[4] because the supplementation was made after they filed

---

[4]Rule 7037(a)(5) provides:

If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

(I)  the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii)  the opposing party's nondisclosure,

- 17 -

the Motion.  Although the supplements were provided after the Motion was filed, under the circumstances of this case, it does not follow that attorney's fees should be awarded to the defendants.

It should first be noted that this proceeding does not involve a situation in which a motion to compel was filed after an opposing party had failed to comply with a rule or court imposed deadline for providing the discovery at issue.  Specifically, although the expert witness supplements were provided after the Motion was filed, they were not filed after they were due, i.e., they were not late when they were filed.  Rule 7026(e)(2), the part of Rule 7026(e) applicable to supplements involving experts, provides that the supplementation "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  Federal Rule 26(a)(3)(B) provides that "[u]nless the court orders otherwise, these disclosures must be made at least 30 days before trial."  The initial pretrial order in this proceeding (Docket #22) was entered on April 2, 2007, and provides in paragraph eight that the final pretrial disclosures shall be filed within 20 days of the entry of the order ruling on dispositive motions.  The orders ruling on dispositive motions (Docket #198 and #200) were entered on January 15, 2009, which means that the final pretrial disclosures

---

response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

specified in the pretrial order were due on February 4, 2009.
Nothing else appearing, this would mean that supplementation
regarding experts likewise would be due on February 4, 2009. What
appears in this proceeding, however, is that February 4, 2009,
predates by several months the plaintiff becoming aware that there
was a need to provide a supplement regarding Guerrini and
McGoldrick. The plaintiff's attorneys were not aware of the mistake
regarding the tax documents until August of 2009, did not receive
the actual tax returns from the IRS until November of 2009 and did
not receive the supplements from the expert witnesses until April
of 2010, all of which were subsequent to February 4, 2009.
Obviously, the pretrial order was not entered by this court with the
intention of requiring the impossible of the parties regarding the
providing of supplements that became necessary after February 4,
2009. Thus, the situation in this case is tantamount to the court
not having set an applicable deadline for supplements arising after
February 4, 2009. Where the court has not ordered otherwise, the
requirement under Rule 7026(a)(3)(B) is that supplements involving
experts "be made at least 30 days before trial." When the
supplements and filed returns were served on the defendants in April
of 2010, a trial date was not even close and, in fact, appears
months away given the further proceedings that will be required upon
defendants' renewal of their motion to withdraw the reference.
Clearly, the supplementation by the plaintiff occurred more than 30

days prior to trial and therefore was filed within the time allowed under Rule 7026(a)(3)(B). This is not to suggest that a party who is aware of a need to supplement an expert's report can purposely delay until 30 days prior to trial in order to gain an advantage at trial. But this is not what occurred in this proceeding. Here, the plaintiff's attorneys acted promptly in seeking and obtaining the tax returns once they realized they were mistaken about the tax documents. They furnished the tax returns to the expert witnesses in November of 2009, the same month they received the returns from the IRS, and had an initial meeting with the experts during November, followed by additional conferences in December. When they received the supplements in April of 2010, they served the supplements and additional tax returns on the defendants before the end of April. Here, the plaintiff acted with reasonable diligence in making the supplementation and did so considerably more than 30 days prior to trial. As such the supplementation was timely and well within the requirements of Rule 7026(a)(3)(B) and hence it cannot be said that the plaintiff's conduct "necessitated the motion" as required under Rule 7037(a)(5). Under these circumstances, the defendants are not entitled to an award of attorneys' fees as a result of choosing to file the Motion when they did.

Moreover, Rule 7037(a)(5) is applicable when the "requested" discovery or disclosure is provided after the filing of the motion.

The record reflects that, in fact, the supplementation sought in the Motion was provided before the Motion was filed. The relief sought in the Motion involves the 2002 and 2003 tax documents that were obtained from Bernard Robinson and Company and an effort to compel the plaintiff to disclose the "provenance" of the tax documents and that the tax documents are not the actual tax returns that were filed by EBW. Specifically, the Motion prays that if the requested sanctions are not imposed (striking the plaintiff's complaint or not allowing the plaintiff to use any of the discovery), then alternatively, that the court "enter an order compelling Plaintiff to supplement his earlier expert witness disclosures and responses to Defendants' discovery requests made in regard to documents provided to and relied upon by Plaintiff's experts <u>so as to divulge the true nature of the 2002 and 2003 EBW Laser, Inc. tax documents and the circumstances under which the same were obtained</u>." (Emphasis supplied). When the Motion was filed and this relief was requested, the plaintiff already had supplied the requested information. Thus, as noted earlier, before the Motion was filed, the plaintiff filed and served an affidavit from Edwin Gatton on March 5, 2010, that did disclose that Mr. Gatton had been mistaken regarding the source of the tax documents, that the tax documents were not obtained from the defendants, that the tax documents were obtained from Bernard Robinson and Company and which described the circumstances under which the documents were obtained from Bernard Robinson.

Additionally, under Rule 7037(a)(5) the payment of fees and costs may not be ordered if the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action or if the circumstances of a case make an award of expenses unjust.   Viewed as a whole, the record in this proceeding reflects that the defendants have not proceeded in good faith in attempting to obtain the relief sought in the Motion. After first advising the plaintiff in August of 2008 that discovery would not be sought regarding the 2002 and 2003 tax documents (which the defendants then knew were not the actual tax returns), and representing to the court in seeking withdrawal of the reference that discovery was complete and the proceeding was ready for trial, the defendants, without prior notice to the plaintiff, plaintiff's attorneys or the court, filed suit in state court in June of 2009 alleging a claim based upon the 2002 and 2003 tax documents.   No further discovery had been requested prior to the filing of the suit and no further discovery or information was sought in the suit regarding the 2002 and 2003 tax documents.   It was only after the dismissal of the state court suit appeared imminent that the defendants withdrew their motion to withdraw the reference and filed the Motion now before the court.   The Motion was preceded by the Gatton affidavit which made clear that the tax documents were not the actual returns filed by EBW and described in detail the circumstances under which the tax documents were obtained and the

mistake of plaintiff's attorneys regarding the tax documents. The correspondence from defendants' counsel preceding the filing of the Motion that is relied upon by the defendants as reflecting a good faith effort to obtain supplementation regarding the tax documents falls short of doing so. This correspondence occurred during the pendency of the defendants' state court action and it is difficult to discern whether it represents a continuation of the inflammatory accusations contained in the lawsuit filed in June or an effort to obtain additional discovery in this proceeding. Other than denying the authenticity of the tax documents and making accusations of fraud and deliberate misconduct, the defendants did little to resolve the issues regarding tax documents before filing the Motion. It is true that the saga regarding the tax documents began as a result of a mistake on the part of plaintiff's attorneys. There was a lack of effective communication between the attorneys working on this proceeding and initially a degree of intransigence on their part which delayed their discovery of the mistake. The defendants, however, could have easily mitigated the situation but chose not to do so. They not only knew that the actual 2002 and 2003 returns were not prepared by Bernard Robinson & Company, they knew who did prepare the 2002 and 2003 returns. Yet, it was not until after the Motion was filed that the defendants filed documents reflecting that the 2002 and 2003 returns had been prepared by Kenneth B. Sandler, an accountant in Florida. The nondisclosure of this information of

course does not negate the mistake on the part of plaintiff's attorneys; however, disclosure of this information would have provided an independent source for verifying the status of the tax documents and is the kind of information that would be disclosed by one who really wanted to resolve the conflict between the parties regarding the origin and status of the 2002 and 2003 tax documents. Viewed as a whole, the conduct of the defendants leading up to the filing of the Motion, and the Motion itself, reflect that the Motion involves an effort by the defendants to obtain sanctions that would obviate a trial or be advantageous when this proceeding is tried, rather than constituting a good faith effort within the meaning of Rule 7037(a)(5)(i) to obtain legitimate discovery or supplementation that had not been provided by the plaintiff.  Moreover, an award of attorneys' fees to the defendants under the circumstances herein described would be unjust within the meaning of Rule 7037(a)(5)(iii).  The defendants therefore are not entitled to an award of attorneys' fees.[5]

In accordance with the foregoing findings and conclusions, an

---

[5]The court has not addressed plaintiff's contention that the applicable provision of Rule 7037 is Rule 7037(c) which is entitled "Failure to Disclose, to Supplement an Earlier Response, or to Admit."  Under that provision, the award of attorneys' fees would be controlled by Rule 7037(c)(1)(A) which provides that the court "may order" payment of attorneys' fees.  Having concluded that attorneys' fees should not be awarded under the more stringent ("must award") language of Rule 7037(a)(5), the court obviously would not award fees pursuant to Rule 7037(c)(1)(A) under the less stringent ("may order") language of that provision.

- 24 -

order shall be entered contemporaneously with the filing of this memorandum opinion denying the defendants' Motion to Compel Discovery.

    This 14th day of June, 2010.

WILLIAM L. STOCKS
United States Bankruptcy Judge

PARTIES IN INTEREST


Charles M. Ivey, III, Esq.
P.O. Box 3324
Greensboro, NC 27402

Jeffrey E. Oleynik, Esq.
P.O. Box 26000
Greensboro, NC 27420

Krispen Culbertson, Esq.
208 Exchange Place
Greensboro, NC 27401

Douglas S. Harris, Esq.
1698 Natchez Trace
Greensboro, NC 27455


Michael D. West, Bankruptcy Administrator